**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VINCENT BERTLING and KARL RAYMOND BERTLING,<br><br>Defendants. | No. CR 05-4125-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING THE DEFENDANTS' MOTIONS IN LIMINE** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A. *Defendant Vincent Bertling's Motion In Limine* . . . . . . . . . . . . . . . . . . . 4
        *1.*    *Evidence that Vincent Bertlin resisted arrest* . . . . . . . . . . . . . 4
            *a.*    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 4
            *b.*    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *2.*    *Evidence from the discovery file* . . . . . . . . . . . . . . . . . . . 8
            *a.*    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 8
            *b.*    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *3.*    *Evidence of conferences with counsel* . . . . . . . . . . . . . . . . 10
            *a.*    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 10
            *b.*    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        *4.*    *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    B. *Defendant Karl Raymond Bertling's Motion In Limine* . . . . . . . . . . . 12
        *1.*    *Evidence of the defendant's prior criminal history* . . . . . . . . 12
            *a.*    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 12
            *b.*    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        *2.*    *Application of* **Daubert** . . . . . . . . . . . . . . . . . . . . . . . . 14
            *a.*    *Arguments of the parties* . . . . . . . . . . . . . . . . . . 14

    *b.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

In a five-count Superseding Indictment, handed down February 17, 2006 (docket no. 25), a Grand Jury charges defendants Vincent Bertling and Karl Raymond Bertling with "conspiracy to obstruct justice," in violation of 18 U.S.C. §§ 371 and 1503, and "drug user in possession of firearms and ammunition" offenses, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). More specifically, **Count 1** of the Superseding Indictment charges that, beginning on a date unknown and continuing until at least December 9, 2005, defendants Vincent Bertling and Karl Raymond Bertling unlawfully, willfully, and knowingly conspired with other persons, known and unknown to the Grand Jury, to corruptly endeavor to influence, obstruct, and impede the due administration of justice in the case of *United States v. Vincent Bertling*, No. CR 05-4125-MWB, a case then pending in the United States District Court for the Northern District of Iowa, by murdering or otherwise intimidating witnesses. **Count 2** charges that, between about December 18, 2003, and about February 7, 2004, defendant Vincent Bertling, then being an unlawful user of controlled substances, knowingly possessed, in and affecting commerce, a firearm identified as a Mossberg shotgun, Model 590, serial number K691960. **Count 3** charges that, on or about June 30, 2004, defendant Vincent Bertling, then being an unlawful user of controlled substances, knowingly possessed, in and affecting commerce, a firearm identified as a Savage Arms, Stevens Model 62, .22 rifle, serial number L360139.

**Count 4** charges that, on or about July 26, 2004, defendant Vincent Bertling, then being an unlawful user of controlled substances, knowingly possessed, in and affecting commerce, a firearm identified as an Astra, Model A100, 9 mm handgun, serial number 9925D. **Count 5** charges that, on or about December 9, 2005, defendant Karl Raymond Bertling, then being an unlawful user of controlled substances, knowingly possessed, in and affecting commerce, ammunition, that is, eleven rounds of .22 caliber ammunition manufactured by Remington outside of the State of Iowa.

This matter is set for jury selection on September 5, 2006, with trial to begin on September 6, 2006. In anticipation of trial, defendant Vincent Bertling filed his August 23, 2006, Motion In Limine (docket no. 47), which he amended August 28, 2006 (docket no. 55). Defendant Karl Raymond Bertling likewise filed a Motion In Limine (docket no. 49) on August 23, 2006. The government filed a joint resistance to both motions in limine on August 30, 2006 (docket no. 60). The court will consider the defendants' motions in limine in turn.

## II. LEGAL ANALYSIS

Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. The court concludes that preliminary determination of

the evidentiary questions presented in the defendants' motions, at least to the extent that such determination can be made before the evidence in question is presented, will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, the court turns to consideration of those motions in turn.

### A. *Defendant Vincent Bertling's Motion In Limine*

In his motion in limine, defendant Vincent Bertling seeks an order excluding three categories of evidence: (1) evidence that he allegedly resisted arrest; (2) evidence of material contained in the discovery file; and (3) evidence of conferences he had with his present or prior counsel. The court will consider these categories of evidence in turn.

#### 1. *Evidence that Vincent Bertlin resisted arrest*

##### a. *Arguments of the parties*

In his motion in limine, as amended, defendant Vincent Bertling first seeks an order excluding evidence that he allegedly resisted arrest. He argues that such evidence should be excluded pursuant to Rule 403 of the Federal Rules of Evidence, because the prejudicial effect of this evidence far outweighs its probative value. In response, the government contends that the evidence that defendant Vincent Bertling resisted arrest both "fleshes out" the factual setting for the arrest and charges and, at least arguably, makes it more probable that Vincent Bertling was conscious of his guilt. The government contends that Vincent Bertling's struggle with arresting agents may even suggest that he was more likely to obstruct justice. Moreover, the government argues, Vincent Bertling has not explained in what way this evidence suggests a decision on an improper basis.

4

### b. Analysis

A commentator has observed, "It is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself." 2 JOHN H. WIGMORE, EVIDENCE § 276, at 122 (James H. Chadbourn rev. 1979); *see also United States v. Clark*, 45 F.3d 1247, 1250 (8th Cir. 1995) (quoting this statement from WIGMORE). Indeed, the Eighth Circuit Court of Appeals has expressly embraced the general principle that evidence that a defendant resisted arrest is admissible to show consciousness of guilt. *United States v. Graham*, 548 F.2d 1302, 1313 n.13 (8th Cir. 1977).

Even so, the Eighth Circuit Court of Appeals has looked for "sufficient . . . evidentiary manifestations to make evidence of . . . resisting arrest highly probative of consciousness of guilt," and hence, of "guilt itself." *United States v. Peltier*, 585 F.2d 314, 323 (8th Cir. 1978). The question is, what would constitute sufficient evidentiary manifestations to make evidence of resisting arrest probative of consciousness of guilt? When addressing the comparable issue of whether evidence of flight was admissible as evidence of "consciousness of guilt," the Eighth Circuit Court of Appeals explained "that the probative value and admissibility of flight evidence depends on the degree of confidence with which the fact-finder can draw four inferences: from the defendant's behavior to flight; from flight to consciousness of guilt; from consciousness of guilt to consciousness of guilt concerning the crime charged; and from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Red Bird*, 450 F.3d 789, 793 (8th Cir. 2006) (citing *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991), and *United States v. Chipps*, 410 F.3d 438, 449-50 (8th Cir. 2005)). This court concludes that consideration of the court's confidence that a factfinder could

5

draw a comparable chain of inferences is appropriate to the court's determination of whether or not evidence that the defendant purportedly resisted arrest is probative and admissible to show "consciousness of guilt." Recast for the present circumstances, the necessary chain of inferences would be the following: from the defendant's behavior to resisting arrest; from resisting arrest to consciousness of guilt; from consciousness of guilt to consciousness of guilt concerning the crime charged; and from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

In this case, Vincent Bertling contends that he was "surprised" and wrestled to the ground by plainclothes police officers at his place of business, and that he did not know what was happening. Under these circumstances, he argues that his supposed resistance to arrest does not give rise to an inference of, and is not probative of, any consciousness of guilt. The court agrees that the chain of inferences here, at every "link," may be tenuous at best, if the evidence shows only that Vincent Bertling was surprised and wrestled to the ground by persons who had not identified themselves as police officers and that he put up some resistance to the "surprise attack." More specifically, such circumstances would do little to suggest that Vincent Bertling's conduct actually constituted resisting arrest, let alone that "resisting arrest" in the manner that Vincent Bertling describes would give rise to an inference of "consciousness of guilt." *Cf. id.* (considering whether comparable inferences can be drawn as the first two steps to determining the admissibility of evidence of flight). It is also important to note that, based on the facts alleged in the Superseding Indictment, Vincent Bertling was apparently arrested and detained before he engaged in the conduct upon which the "obstruction of justice" charge in **Count 1** is based, so that it is difficult to see how his purported resistance to arrest could provide any inference of consciousness of guilt or actual guilt on the "obstruction of justice" count. *Cf. id.* (considering whether a comparable inference can be drawn as

the third step in determining the admissibility of evidence of flight). Where the first three inferences appear doubtful, at least under Vincent Bertling's version of the circumstances of his arrest, the fourth inference, from consciousness of guilt of the charged offense to actual guilt of the charged offense, is weak to the point of non-existent. *Cf.* (considering whether a comparable inference can be drawn as the last step in determining the admissibility of evidence of flight). Therefore, before the court would allow the government to present to the jury or make any reference to any evidence that Vincent Bertling supposedly resisted arrest, the court would, at the very least, require an offer of proof outside the presence of the jury, so that the court could determine whether any reasonable factfinder could infer from the circumstances any consciousness of guilt on Vincent Bertling's part concerning any offense charged.

In this case, even accepting the truth of the government's version of events, and even supposing that the necessary inferences arise in the circumstances alleged by the government, which the court doubts, the court finds that evidence that Vincent Bertling supposedly resisted arrest should be excluded pursuant to Rule 403, on the basis that its probative value, if any, is outweighed by its potential for unfair prejudice. Although Vincent Bertling failed to articulate the nature of the unfair prejudice, it is apparent to the court that such evidence, where it so weakly suggests consciousness of guilt of a charged offense, would serve no purpose other than to suggest that Vincent Bertling is a bad and violent person. FED. R. EVID. 403 (probative evidence may be excluded if its probative value is outweighed by its potential for unfair prejudice).

The court also is not persuaded by the government's contention that evidence that Vincent Bertling resisted arrest should also be admissible on the ground that the evidence makes it more likely that Vincent Bertling would have obstructed justice in the violent way alleged in the "obstruction of justice" charge. Such use of this evidence appears to fall

7

precisely within the prohibition of Rule 404(b) of the Federal Rules of Evidence on use of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith, and the government has not explained how the evidence in question here falls within an exception under that Rule. FED. R. EVID. 404(b).

Therefore, this part of Vincent Bertling's motion in limine will be granted.

### 2. *Evidence from the discovery file*

#### a. *Arguments of the parties*

Next, Vincent Bertling seeks an order limiting the evidence offered by the government concerning material contained in the discovery file. He contends that material contained in the discovery file is protected by attorney-client privilege. He also contends that the discovery file contains information and records maintained solely for the purpose of litigation, not as normal business records, and is, in any event, unreliable or inaccurate. The government contends that an order excluding or limiting such evidence is not necessary, but does not explain the basis for that position separate from its position that the court need not limit or exclude evidence of Vincent Bertling's conferences with his attorneys, which is considered separately below. The government does explain that it will only offer testimony of the Assistant Federal Defender who initially represented Vincent Bertling to the effect that the attorney reviewed the discovery file in this case on December 6, 2005; that by doing so, he learned the identity of two of the witnesses against Vincent Bertling, and found that his office had previously represented those witnesses; and that he then met with Vincent Bertling to inform him that he and his office would have to withdraw from representing him. Apparently, the government's contention is that no Rule of Evidence is implicated by this reference to information in the discovery file.

### *b.     Analysis*

It is clear that evidence from the discovery file will not, itself, be admissible until and unless the government establishes a proper foundation and the other requirements for its admissibility. However, that principle hardly requires a pre-trial ruling excluding the evidence until the necessary showing is made.

On the other hand, it appears that Vincent Bertling is also asserting that the contents of the discovery file are somehow subject to attorney-client privilege, and should be excluded on that basis. The contents of the discovery file, in and of themselves, simply are not work product of Vincent Bertling's attorney or otherwise subject to any attorney-client privilege. The contents of the discovery file were not generated by Vincent Bertling's attorney for purposes of defending the case, but were instead generated by the government and disclosed to Vincent Bertling's attorney, *see, e.g., In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997) (the work product doctrine sharply limits the access of an opponent to materials prepared in anticipation of litigation or for trial), and the contents of the discovery file did not, themselves, constitute any confidential communication between Vincent Bertling and his attorney. *See, e.g., United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (the attorney-client privilege applies only to confidential communications made to facilitate legal services to the client). On the other hand, an attorney's discussion with his client concerning the attorney's assessment of the information in the discovery file would assuredly be subject to attorney-client privilege. *See id.*

Even so, in this case, it does not appear that the government intends to elicit any testimony from Vincent Bertling's former attorney concerning the contents of the discovery file, beyond the fact that the file indicated that he had a conflict of interest based on prior representation of two witnesses identified therein, any testimony about whether he told

Vincent Bertling the identity of the witnesses giving rise to the conflict, or any testimony about the attorney's assessment of the information that the witnesses had provided to law enforcement officers. Rather, the government represents that it intends to offer only the former attorney's testimony that he identified in the discovery file two persons named therein whom his office had previously represented, and then advised Vincent Bertling that he would have to withdraw on the basis of a conflict of interest. This testimony would not implicate any work-product or attorney-client privilege.

Because it is not clear that any information concerning the discovery file itself would violate any attorney-client privilege, this part of Vincent Bertling's motion in limine will be denied.

### 3. *Evidence of conferences with counsel*
#### a. *Arguments of the parties*

Finally, Vincent Bertling seeks an order limiting the evidence offered by the government concerning conferences between the defendant and his present or prior counsel on the ground that such evidence is protected by attorney-client privilege. In response, the government contends that an order excluding or limiting such evidence is not necessary, because the testimony that the government intends to elicit from Vincent Bertling's former attorney will not implicate any privilege. More specifically, the government asserts that the anticipated testimony of the Assistant Federal Defender who initially represented Vincent Bertling will be limited to the following matters: (1) that counsel reviewed the discovery file in this case on December 6, 2005; (2) that by doing so, he learned the identity of two of the witnesses against Vincent Bertling; (3) that by doing so, he also learned that his office had a conflict of interest arising from its prior representation of those two witnesses and that he, therefore, could not continue to represent Vincent Bertling; (4) that he met with and had a conversation with Vincent Bertling on December

6, 2006; and (5) that his representation of Vincent Bertling ended soon thereafter. The government asserts that none of this information implicates any attorney-client privilege.

### b. *Analysis*

Neither the fact that counsel represents a certain person nor the fact that counsel has withdrawn from such representation implicates any attorney-client privilege, because those facts, standing alone, do not disclose any confidential communications. *See, e.g., Horvath*, 731 F.2d at 561 (the attorney-client privilege applies only to confidential communications made to facilitate legal services to the client). Moreover, evidence that an attorney recognized the names of two witnesses mentioned in a discovery file, and felt compelled to withdraw from representing the defendant on the basis of a conflict of interest arising from prior representation of those witnesses, does not implicate any attorney-client privilege, *id.* nor is it hearsay, because it is evidence from the attorney's firsthand experience that does not convey any out-of-court statement of another. FED. R. EVID. 801 ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). On the other hand, information from, by, or about those persons in the discovery file might very well be hearsay, *id.*, and if the attorney conveyed to a client any information about witnesses that he had identified in the discovery file or provided to a client information from those persons purportedly provided to government officials, the attorney's communication to the client might constitute work product and/or confidential communication. *See, e.g., In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 924 (the work product doctrine sharply limits the access of an opponent to materials prepared in anticipation of litigation or for trial); *Horvath*, 731 F.2d at 561 (the attorney-client privilege applies only to confidential communications made to facilitate legal services to the client). In this case, however, the government purportedly will not offer or inquire into any such assessment by counsel of

11

the information in the discovery file or any communication between counsel and Vincent Bertling about that information.

Thus, until and unless the government attempts to offer any evidence that does or might implicate either the work-product privilege or attorney-client privilege, there is no basis for the ruling that defendant Vincent Bertling seeks.

### *4. Summary*

Vincent Bertling's motion in limine will be granted to the extent that the government will be precluded from offering or making any reference to the circumstances of Vincent Bertling's arrest. Vincent Bertling's motion in limine will otherwise be denied.

### *B. Defendant Karl Raymond Bertling's Motion In Limine*

In his August 23, 2006, Motion In Limine (docket no. 49), defendant Karl Raymond Bertling seeks an order as follows: (1) excluding evidence of his prior criminal history; and (2) subjecting testimony from law enforcement officers concerning common practices in drug-trafficking and/or about weapons identification, possession, or use to the standards articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and excluding any testimony that does not meet the *Daubert* standards. The court will consider the parts of Karl Raymond Bertling's motion in turn.

### *1. Evidence of the defendant's prior criminal history*

#### *a. Arguments of the parties*

In support of his contention that the court should exclude evidence of his prior criminal history, Karl Raymond Bertling contends that such evidence should be excluded pursuant to Rules 404(b) and 609 of the Federal Rules of Evidence. Karl Raymond Bertling argues that evidence of his prior arrests would be prejudicial, unrelated to the instant offense, and as to several of the arrests, not close in time.

In response, the government states that it does not intend to use any of Karl Raymond Bertling's prior convictions in its case-in-chief, although it would like to reserve the option to use Karl Raymond Bertling's 1993 conviction for theft in the third degree in California to cross-examine Karl Raymond Bertling, pursuant to Rule 609(a)(2) and (b), should he become a witness. The government asserts that the probative value of the theft conviction, outweighs any prejudicial effect of presenting that evidence.

### b. *Analysis*

The only "fighting issue" for this part of Karl Raymond Bertling's motion in limine is whether the government can use his 1993 theft conviction for impeachment purposes. That conviction occurred more than ten years ago, although it is not clear whether it occurred more than ten years after Karl Raymond Bertling's release from confinement for that conviction. *See* FED. R. EVID. 609(b). Although Karl Raymond Bertling quotes the portion of Rule 609(b) that states that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction," he fails to quote the exception therein, which states, "*unless* the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." *Id.* (emphasis added).[1] The

---

[1] Because Karl Raymond Bertling asserts that the government is "aware" of the 1993 theft conviction and has contested the admissibility of that prior conviction, and because he does not assert that he received inadequate notice of the government's intent to use that prior conviction, the court finds that the remainder of Rule 609(b) is not at issue. FED. R. EVID. 609(b) (stating, in pertinent part, "[E]vidence of a conviction more than 10 years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.").

government contends that the probative value of this defendant's prior theft conviction substantially outweighs any prejudicial effect of that evidence, but does not explain how this is so. The court finds that a prior conviction for theft in the third degree that occurred thirteen years ago has such marginal value, even as a crime of "dishonesty," to the determination of the credibility of the defendant's testimony relating to charges of conspiracy to obstruct justice and being a drug user in possession of ammunition, that the marginal probative value is, instead, outweighed by the prejudicial effect of such evidence. *Id.* In the circumstances presented here, evidence of this prior conviction would do little more than suggest that this defendant is a "bad person." Thus, the court cannot say that the interests of justice will be served by admitting evidence of this prior conviction for purposes of impeachment. *Id.*

Therefore, this portion of defendant Karl Raymond Bertling's motion in limine will be granted.

### 2. *Application of* **Daubert**

#### a. *Arguments of the parties*

In support of the portion of his motion in limine seeking an order subjecting to "*Daubert* standards" testimony from law enforcement officers concerning common practices in drug-trafficking and/or about weapons identification, possession, or use, Karl Raymond Bertling argues that testimony by law enforcement officers as to knowledge of common practices in the drug trade will likely be presented and would presumably be regarded by the jury as "expert testimony." He contends that if such evidence does not meet the standards for expert testimony set forth in *Daubert*, it should be excluded, and that essential expert testimony should not be admitted under the guise of lay opinions. In response, the government asserts that it has no intention of offering evidence consisting of a summary of practices and procedures used in drug-trafficking or illegal weapon

possession that any law enforcement officer believes are commonly used, and does not intend to offer any testimony from any law enforcement officer explaining how drug traffickers operate or how they use firearms generally. The extent of any testimony that the government originally intended to offer that might have implicated this portion of Karl Raymond Bertling's motion, the government contends, was testimony of an law enforcement officer that neither firearms nor ammunition are manufactured in Iowa, so that all of the firearms and ammunition in question in this case must have traveled in interstate commerce before they were possessed by any defendant. However, the government points out that the parties have reached a stipulation concerning the "interstate commerce" element of the "drug user in possession of firearms or ammunition" offenses.

### *b.  Analysis*

In light of the government's representations and the parties' stipulation concerning the "interstate commerce" element of the "drug user in possession of firearms or ammunition" offenses, this portion of Karl Raymond Bertling's motion in limine will be denied as moot.

### III.  CONCLUSION

Upon the foregoing,

1. Defendant Vincent Bertling's August 23, 2006, Motion In Limine (docket no. 47), as amended August 28, 2006 (docket no. 55), is **granted** to the extent that the government is hereby precluded from offering or making any reference to the circumstances of Vincent Bertling's arrest, but the motion is otherwise **denied**.

2. Defendant Karl Raymond Bertling's August 23, 2006, Motion In Limine (docket no. 49) is **granted** to the extent that the government is hereby precluded from

offering or making any reference to evidence of this defendant's prior criminal history, but the motion is otherwise **denied**.

**IT IS SO ORDERED.**

**DATED** this 1st day of September, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA