**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

VINCENT BERTLING and KARL
RAYMOND BERTLING,

       Defendants.

No. CR05-4125-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' POST-TRIAL
MOTIONS**

_____

**TABLE OF CONTENTS**

*I.* **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A.* **The Motions For Judgment Of Acquittal** . . . . . . . . . . . . . . . . . . . 8
        *1.* **Standards applicable to motions for judgment of acquittal** . . . . 9
        *2.* **Sufficiency of the evidence** . . . . . . . . . . . . . . . . . . . . . . . 10
            *a.* **Count one** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            *b.* **Counts two, three and four** . . . . . . . . . . . . . . . . . 13
    *B.* **The Motions For New Trial** . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        *1.* **Standards applicable to motions for new trial** . . . . . . . . . . 15
        *2.* **Weight of the evidence** . . . . . . . . . . . . . . . . . . . . . . . . . 17
            *a.* **Count one** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            *b.* **Counts two, three and four** . . . . . . . . . . . . . . . . . 20

*III.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

> "On [a motion for new trial] it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict . . . will result in a miscarriage of justice. . . . The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right."

*United States v. Logan*, 861 F.2d 859, 866 (5th Cir. 1988) (Brown, J., dissenting) (quoting *Aetna Cas. & Sur. Co. v. Yeatts*, 122 F.2d 350, 352-53 (4th Cir. 1941)). Although the matter currently before the court proceeded to jury trial and resulted in a guilty verdict on all counts charged against the defendants, the twilight of this case, as alluded to in the preceding quotation, requires this court to perform one further task: to consider and resolve the post-trial motions for judgment of acquittal and, in the alternative, new trial brought by both of the defendants. This court is acutely aware that the jury conscientiously selected in this case rendered its verdict of "guilty." Moreover, this court has a particularly profound respect for the function of the jury that has been fortified due to the vast number of meticulously (and accurately) decided jury trials held in the presence of the undersigned. Nevertheless, the court's duties and obligations are not discharged simply because the jury hath spoken. Accordingly, the court must now consider, *inter alia*, whether upholding the jury's verdict will result in a miscarriage of justice, an endeavor that the court renders only after extensive consideration and reflection.

## I. BACKGROUND

Defendants Vincent Bertling and Karl Raymond Bertling (hereinafter referred to individually as "Vincent" and "Karl Raymond" and jointly as "the Bertlings" or "the defendants") were charged in a Second Superseding Indictment handed down on February 17, 2006. Count One charged both of the defendants with conspiracy to corruptly endeavor to influence, obstruct and impede the due administration of justice in *United*

*States v. Vincent Bertling*, CR05-4125-MWB, by intimidating witnesses, in violation of 18 U.S.C. §§ 1503 and 371. Counts Two, Three and Four charged defendant Vincent with being an unlawful user of controlled substances in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Similarly, Count 5 charged defendant Karl Raymond with being an unlawful user of controlled substances in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).[1]

A trial on all counts commenced on September 5, 2006. With respect to the allegations contained in Count One, the government presented evidence of a recorded conversation between Vincent and Karl Raymond that occurred shortly after Vincent's arrest for the conduct that led to the charges identified in Counts Two through Four. More specifically, on December 7, 2005, at approximately 1:55 p.m., Vincent placed a collect call from the Woodbury County Jail to Karl Raymond, his brother. The pertinent and relevant portions of this conversation are as follows:

| Karl R. | What up? |
|---|---|
| Vincent | What's up? Were you able to get the keys? |
| Karl R. | I haven't been able to get away from my neighborhood yet. |
| Vincent | Oh, okay, okay. Well, I put in the slip already. |
| Karl R. | Okay. |
| Vincent | So. |
| Karl R. | Alright, I should maybe, I should be able, you know, as soon as I can get. . . I just want to call for a different ride cuz I've been done two hours now, so. |
| Vincent | You what? |
| Karl R. | I said I guess I am going to have to call for a different ride cuz I'm down to two hours of being here, so. |
| Vincent | Okay. |
| Karl R. | And we've got another layer of snow out here, so. |

---

[1] Count 5 is not at issue in the defendants' post-trial motions, and therefore, will not be discussed at length in this opinion.

| | |
|---|---|
| Vincent | Oh, okay. Well, I got some news. |
| Karl R. | Okay. |
| Vincent | They have to change attorneys for me because the attorney that I had his office is also . . . another lawyer within his office is representing the group against me.  And you know who that is? |
| Karl R. | No. |
| Vincent | Joanna and David. |
| Karl R. | What? |
| Vincent | Yep, Joanna is fucking testifying against me. |
| Karl R. | Oh, man, ohhh.  Alright it's time to get a murder on (or) it's time to get a murder run. |
| Vincent: | Huh? |
| Karl R. | I said it's time to get a murder on (or) it's time to get a murder run. |
| Vincent | Something. |
| Karl R. | Um hum.  Yeah.  I got an enforcer (or) I got it in for her. |
| Vincent | So. And I want to say she's located over there on G Street still at her grandma's house, about G Street and I want to say 12th, 13th, somewhere in there.  It's a lime green house. |
| Karl R. | Um hum. |
| Vincent | That would be her grandma's.  Amber knows where it's at. |
| Karl R. | Um hum, okay. |
| Vincent | If she's still there.  And she was working at Wal-mart last I knew. |
| Karl R. | Okay. |
| Vincent | The Wal-Mart in South Sioux. |
| Karl R. | Actually, I think she works at Qwest now but that's alright. |
| Vincent | Okay, yeah, I think so too.  Yeah, you're right. |
| Karl R. | Um hum. |
| Vincent | Alright. |
| Karl R. | Okay. |
| Vincent | So. |
| Karl R. | Huh, rather interesting. |
| Vincent | Yep.  So they're gonna have to get me another attorney, another appointed attorney, and that will be in the next couple of days.  And then when I get him, I'm gonna request all of the evidence against me seeing what all they have. |
| Karl R. | Yep. |
| Vincent | So, that's the latest.  And I seen some other people in here that Joanna |

| | |
|---|---|
| | turned in too by the way. |
| Karl R. | Oh really. |
| Vincent | Yep, she's ratting out everybody. |
| Karl R. | Hold on (inaudible) I'm on the phone with my brother right now so, Okay. |
| Vincent | I'm not for sure, you know, I can't be one-hundred-percent positive but I don't know if Matt's on it or not. |
| Karl R. | On, on, on their side list. |
| Vincent | Yeah. |
| Karl R. | Really. |
| Vincent | Or, you know, or that side. One way or another. Cuz, you know, how usually he's . . . |
| Karl R. | Confused. |
| Vincent | Yeah. |
| Karl R. | Yeah. |
| Vincent | And I know at one time he was there when they came to serve me papers, and he was really (inaudible) pissed off, so. And I know another time after I told him not to hang around with Joanna he still would. |
| Karl R. | Okay. |
| Vincent | So I don't know if they've gotten to him or what, but I do also know that him and his dad were the ones that got rid of that rifle, not me. |
| Karl R. | Really. |
| Vincent | Yeah. They got rid of the rifle. |
| Karl R. | Huh. |
| Vincent | They sold the rifle. |
| Karl R. | Interesting. |
| Vincent | So. |
| Karl R. | Hum, um, um, um. |
| Vincent | Alright. |
| Karl R. | I've got a couple more little thingies on my to-do list. |
| Vincent | But I'm not, ya-know, one-hundred-percent sure what Matt's involvement is, if any. But I remember at one time he told me that they came to his house and that his mom left with them, with the . . . you know, to take the evidence. |
| Karl R. | Huh. |
| Vincent | So I don't know what was said or done, so I'm not for sure. |

| | |
|---|---|
| Karl R. | Alright. |
| Vincent | But I'd still be on, you know, precaution because I do remember or recall a couple of times where people have mentioned that they've seen Matt riding around with agents. |
| Karl R. | Yeah, there was one here recently where it was supposedly something similar to that situation here. |
| Vincent | Yeah. So, I'd be careful. |
| Karl R. | Yep, I'll pick that up, okay. |
| Vincent | So. |
| Karl R. | Alrightie, I was just going to start making some other calls to see if I can't (inaudible) down a different driver. |
| Vincent | Is Amber busy or something? |
| Karl R. | Umm, no, no . . . |
| Vincent | She might not want to go to Sioux Falls, dude. |
| Karl R. | Oh, no, I wouldn't (inaudible) to Sioux Falls anyway because of snow. |
| Vincent | Okay, that's fine. |
| Karl R. | But no, I haven't called her yet because . . . |
| Vincent | Can you move the cars.[2] |
| Karl R. | Huh? |

The remainder of the conversation centers upon a discussion of tending to various aspects of Vincent's life while he is incarcerated. More specifically, the brothers proceed to discuss moving Vincent's car, calling Vincent's girlfriend to inform her of Vincent's status, cleaning Vincent's apartment and paying Vincent's bills. In addition to the recorded conversation, the government presented evidence in the form of testimony from Darrin Maas and Amber Watson that Karl Raymond did, in fact, refer to Maas as "his enforcer." Further, Watson testified that Karl Raymond had, on occasion, carried a firearm and at one point had told her that he had "no problems shooting first and asking questions later." Watson also testified that Karl Raymond pledged to take care of the

---

[2] Listening to the actual recorded conversation, as distinguished from merely reading a cold transcript of the conversation, is critical to the court's evaluation of this conversation. It is also essential to the court's resolution of this motion.

witnesses that he had learned were testifying against his brother.

With respect to Counts Two, Three and Four, the government presented evidence of Vincent's unlawful drug use in the form of testimony by Joanna L. Gotschall-Gillaspie and David Gillaspie. The Gillaspies testified that they sold methamphetamine to Vincent approximately once a week from the early spring of 2004 until about mid-summer of 2004. They further stated that they had witnessed Vincent use methamphetamine in their home on a few occasions during this same time period. In addition, the government elicited testimony from Jeremy White. White stated that he had introduced Vincent to the Gillaspies and that he had used methamphetamine with Vincent about twelve times beginning in early 2004 up until a few months prior to Vincent's arrest in 2005. Maas also testified for the government and indicated that he had used methamphetamine with Vincent about four times from the summer of 2005 until Thanksgiving of that same year. Finally, Watson testified that she used methamphetamine with Vincent nearly daily from the spring of 2001 until the fall of 2005. Moreover, the government presented the testimony of Special Agent Zane Dodds, of the Bureau of Alcohol, Tobacco, Firearms and Explosives, who testified that when Vincent was arrested, he was in possession of a plastic tube containing methamphetamine residue. In addition, Agent Dodds testified that during his investigation, Vincent admitted to using methamphetamine on the weekends and told Agent Dodds that he had started using again in 2003. Agent Dodds further testified that Vincent admitted to using in June 2004, approximately one month before Agent Dodds visited Vincent's home. With respect to these counts, the government also presented evidence that Vincent possessed three different firearms at three different times. More specifically, the government presented evidence that Vincent possessed a Mossberg shotgun, a Savage Arms rifle and an Astra handgun on or about December 18, 2003; June 30, 2004; and July 26, 2004.

At the close of the government's case-in-chief, both defendants moved for judgment of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure with respect to Count One. Additionally, Vincent moved for judgment of acquittal with respect to Counts Two, Three and Four. The court reserved ruling on both of the defendants' motions until after the jury verdict. On September 8, 2006, after approximately four hours of deliberation, the jury returned a verdict finding the defendants guilty on all counts as charged in the Second Superseding Indictment. Following the jury verdict, both defendants renewed their Rule 29 motions. The court directed counsel for the defendants to submit their respective Rule 29 motions in writing. On September 15, 2006, both defendants filed separate, timely post-trial motions for judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure (Doc. Nos. 97, 98), as well as motions for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure on this same date (Doc. Nos. 96, 99). The government has resisted the defendants' post-trial motions (Doc. No. 104). As the post-trial matters are now fully submitted, the court will proceed to address the merits of the defendants' arguments.

## II. LEGAL ANALYSIS

### A. The Motions For Judgment Of Acquittal

In their motions for judgment of acquittal, both Vincent and Karl Raymond challenge the sufficiency of the evidence to support their convictions with respect to Count One. Additionally, Vincent challenges the sufficiency of the evidence to support his convictions with respect to Counts Two, Three and Four. Essentially, the defendants contend the evidence presented at trial was insufficient to permit a reasonable jury to find them guilty beyond a reasonable doubt on the challenged counts.

### *1.* *Standards applicable to motions for judgment of acquittal*

Rule 29(a) of the Federal Rules of Criminal Procedure provides, in pertinent part, that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which *the evidence is insufficient to sustain a conviction." Fed. R. Crim. P.* 29(a) (emphasis added). While Rule 29(a) expressly provides for such a motion before the case is submitted to the jury, *see id.,* Rule 29(c) provides, in pertinent part, that "[a] defendant may move for judgment of acquittal, or renew such a motion . . . within any . . . time the court sets during the 7-day period" after a guilty verdict or discharge of the jury. *Fed. R. Crim. P.* 29(c)(1). Both defendants have filed such a timely motion for judgment of acquittal within the allotted time provided for by the rule.

As the Eighth Circuit Court of Appeals has explained, "A motion for a judgment of acquittal should be *denied* where the evidence, viewed in the light most favorable to the government, is such that a reasonable jury could have found each of the essential elements of the crime beyond a reasonable doubt." *United States v. Moyer,* 182 F.3d 1018, 1021 (8th Cir. 1999) (emphasis added) (citing *United States v. Hood,* 51 F.3d 128, 129 (8th Cir. 1995), and *United States v. Huntsman,* 959 F.2d 1429, 1436-37 (8th Cir. 1992). To put it another way, "'[a] motion for judgment of acquittal should only be *granted* where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any essential elements of the crime charged.'" *United States v. Pardue,* 983 F.2d 843, 847 (8th Cir. 1993) (quoting *United States v. Mundt,* 846 F.2d 1157, 1158 (8th Cir. 1988), with citation omitted and emphasis added); *accord United States v. Lopez*, 384 F.3d 937, 943 (8th Cir. 2004) ("'In reviewing a challenge to the sufficiency of the evidence, we may reverse a jury's verdict only where a reasonable fact-finder must have harbored reasonable doubt relating to the government's proof on at least one of the essential elements of the offense.'"), *cert.*

*denied*, *Gonzales-Lara v. United States*, 126 S. Ct. 1078 (2006) (quoting *United States v. Jensen*, 141 F.3d 830, 833 (8th Cir. 1998)) . Thus, a jury's verdict must be upheld even where the evidence "'rationally supports two conflicting hypotheses" of guilt and innocence.'" *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006) (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). The court must "give the jury's verdict the benefit of reasonable inferences gathered from the record." *Lopez*, 384 F.3d at 943. Thus, in either the trial court or the appellate court, the standard is the same:

> [T]he test is whether "a reasonable fact finder could have found guilt beyond a reasonable doubt." *United States v. Garrett*, 948 F.2d 474, 476 (8th Cir. 1991) (citation omitted). Under this standard, the district court has "very limited latitude." *United States v. Jewell*, 893 F.2d 193, 194 (8th Cir. 1990). In deciding a motion for judgment of acquittal, the court can neither weigh the evidence nor assess the credibility of the witnesses. *Burks v. United States*, 437 U.S. 1, 16, 98 S. Ct. 2141, 2150, 57 L. Ed. 2d 1 (1978).

*Pardue*, 983 F.2d at 847. As the Eighth Circuit recently noted, a defendant "'confronts a very high hurdle with this argument, as [a reviewing court] must employ a very strict standard of review on this issue.'" *United States v. Walker*, 393 F.3d 842, 846 (8th Cir. ), *cert. denied*, 126 S. Ct. 463 (2005) (quoting *United States v. Cook*, 356 F.3d 913, 917 (8th Cir. 2004)). "This narrowly-constricted power of review is in contrast to the district court's broad discretion in ruling upon a motion for new trial." *United States v. Baker*, 367 F.3d 790, 797-98 (8th Cir. 2004).

### 2. *Sufficiency of the evidence*

#### a. *Count one*

The court will begin by considering the sufficiency of the evidence to support the defendants' convictions on the conspiracy charge set forth in Count One of the Second Superseding Indictment. In order to convict the defendants of the conspiracy charge, the

government was required to prove beyond a reasonable doubt that each defendant

> "(1) had an agreement to achieve an illegal purpose, (2) knew
> of the agreement, and (3) knowingly became part of the
> agreement.'" *United States v. Wintermute*, 443 F.3d 993,
> 1003 (8th Cir. 2006). There need not be "direct evidence of
> an explicit agreement" between the coconspirators, "a 'tacit-
> understanding' . . . may be, and often will be, inferred from
> circumstantial evidence." *Id.*

*United States v. Shepard*, 462 F.3d 847, 867 (8th Cir. 2006); *see United States v. Winston*, 456 F.3d 861, 866 (8th Cir. 2006); *United States v. Johnson*, 439 F.3d 947, 954 (8th Cir. 2006). "In many conspiracy cases there is no confession by the defendant or other direct proof that he agreed to the illegal act. However, the jury is free to consider all the evidence—direct and indirect—presented of the defendant's statements and actions." *United States v. Wilson*, 103 F.3d 1402, 1406 (8th Cir. 1997). In addition, the jury may "draw reasonable inferences from the evidence presented about what the defendant's state of mind was when he did or said the things presented in the evidence." *Id.* at 1407. Although the Eighth Circuit has held that a defendant may be convicted for even a minor role in a conspiracy, the government is still required to "offer enough evidence to prove a defendant's connection to a conspiracy beyond a reasonable doubt before a conspiracy conviction can be upheld." *United States v. Lopez*, 443 F.3d 1026, 1028 (8th Cir. ) (en banc), *cert. denied*, *Parra v. United States*, 127 S. Ct. 214 (2006).

Turning to the defendants in this case, the court finds that there is sufficient evidence to support the defendants' convictions with respect to Count One—conspiracy to corruptly endeavor to influence, obstruct and impede the due administration of justice in *United States v. Vincent Bertling*, CR05-4125-MWB, by intimidating witnesses. As to the conspiracy, the first question the court must address is whether Vincent and Karl Raymond had an agreement to achieve an illegal purpose, i.e. to corruptly endeavor to

influence, obstruct and impede the due administration of justice in *United States v. Vincent Bertling*, CR05-4125-MWB, by intimidating witnesses. "The existence of an agreement is established upon a showing the defendant[s were] aware of the purposes of the agreement and voluntarily participated in the agreement." *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006) (citing *United States v. Hester*, 140 F.3d 753, 760 (8th Cir. 1998)). Here, viewing the evidence in the light most favorable to the government, as this court must, a reasonable jury could have arguably found that Vincent and Karl Raymond entered into an agreement with each other to intimidate witnesses. The evidence introduced at trial demonstrated that, in the case pending against Vincent, the Gillaspies were the chief witnesses against Vincent. The previously-quoted telephone conversation entered into evidence during trial reveals that, after learning the Gillaspies, referred to by their first names in the conversation, were going to testify against Vincent, Karl Raymond indicated it was time to either go on a murder run or time to get a murder on or something to that effect. In response, Vincent agreed that "something" had to be done. These statements are sufficient to establish that the defendants understood that they had entered into a tacit understanding, and therefore, an agreement sufficient to establish a legal conspiracy, with the purpose of influencing the witnesses—either through intimidation or other more sinister means—involved in Vincent's pending case. Moreover, in furtherance of this tacit understanding entered into by the defendants, the two brothers immediately proceed to discuss where Joanna Gillaspie lived and worked. This interpretation of the evidence is bolstered by the fact that after discussing a potential third witnesses's involvement, Karl states that he has a few more "thingies," to take care of. However, knowing the purpose of the previously-entered-into agreement, Vincent proceeds to quickly clarify his position that he is not 100% sure of the potential witnesses's involvement, in an effort to insulate the potential witness from unwarranted harm. Based on the foregoing

evidence, a reasonable juror could conclude that (1) Vincent and Karl Raymond entered into a tacit understanding, that at a minimum, Karl Raymond would intimidate adverse witnesses based on Karl Raymond's reference to a murder run; (2) the Bertlings both knew of the agreement that "something" should be done; and (3) the Bertlings knowingly became part of that agreement as evidenced by their discussion of where Joanna lived and worked. Accordingly, the defendants' Motions for Judgment of Acquittal **is denied with respect to Count One**.

### b.     *Counts two, three and four*

Vincent also challenges his convictions with respect to Counts Two, Three and Four. Specifically, Vincent argues the evidence was insufficient to support his convictions under these counts because the evidence regarding his alleged use of drugs was provided by witnesses who lacked credibility. In support of this argument, Vincent contends he was searched on multiple occasions subsequent to July of 2004 and was never found to be in possession of drugs. However, it is well-established in this circuit that a reviewing court is "obliged to defer to the jury's determination of the credibility of the witnesses." *Lopez*, 443 F.3d at 1031. Recently, the Eighth Circuit summarized this well-established principle:

> "Questions of credibility are the province of the jury." [*United States v.*] *Chavez*, 230 F.3d [1089,] 1091 [(8th Cir. 2000)] (citing *United States v. Fuller*, 942 F.2d 454, 458 (8th Cir. 1991)). In ruling on a motion for acquittal, a trial court must determine whether sufficient evidence was presented to support a verdict without considering the weight of such evidence or its credibility. *Id.* (citing *Burks v. United States*, 437 U.S. 1, 16, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *United States v. Bredell*, 884 F.2d 1081, 1082 (8th Cir. 1989)). A trial court has neither the duty nor the authority to grant a motion for acquittal based on the credibility of a witness. *Chavez*, 230 F.3d at 1091. Thus, we conclude that the trial court committed no error in denying the motion for acquittal

> to the extent that it was challenged on the credibility of testimony at trial.

*United States v. Kirkie*, 261 F.3d 761, 768 (8th Cir. 2001). In accord with the Eighth Circuit's guidance, this court will not second-guess the jury's credibility determination of the Government's witnesses in this case simply because the witnesses had much to gain by their testimony. *See United States v. Vinton*, 429 F.3d 811, 817 (8th Cir. 2005) ("Testimony is not unreliable as a matter of law just because a witness is a co-conspirator or a cooperating witness [ ].");  *United States v. Drapeau*, 414 F.3d 869, 877 (8th Cir. 2005) ("'Testimony does not become legally insubstantial because the witness stands to gain by lying; the defendant is entitled to cross-examine such witnesses to expose their motivations, and it is up to the jury to decide whether the witness is telling the truth despite incentives to lie.'"), *cert. denied*, 126 S. Ct. 1090 (2006); *United States v. Payne*, 940 F.2d 286, 291 (8th Cir. 1991) ("The existence and contents of . . . [a] plea agreement were precisely the sort of thing that affected the weight of [the] testimony, not its admissibility, and furthermore provided abundant material for impeachment and cross-examination.").

Construing any credibility challenges in the light most favorable to the verdict, *Vinton*, 429 F.3d at 815, this court concludes that the evidence against Vincent was more than sufficient to support his convictions for being an unlawful user of controlled substances in possession of a firearm. Multiple witnesses testified regarding Vincent's drug usage, specifically, his methamphetamine usage. This, in addition to the other evidence presented at trial, provided ample evidence for a jury to find beyond a reasonable doubt that Vincent was guilty of Counts Two, Three and Four. Accordingly, defendant Vincent Bertling's Motion for Judgment of Acquittal is **denied with respect to Counts Two, Three and Four.**

## B. The Motions For New Trial

Both of the defendants have also moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In their motions for new trial, both of the defendants challenge the weight of the evidence supporting their respective convictions on Count One, asserting that the evidence weighs heavily enough against the verdict to indicate a miscarriage of justice has occurred. In addition, Vincent raises this same argument with respect to his convictions on Counts Two, Three and Four. Because the standards under which these motions are evaluated differ substantially from those applied to motions for judgment of acquittal, the court will begin by setting forth the governing standards, and will then turn to its consideration of the defendants' respective arguments.

### 1. Standards applicable to motions for new trial

Rule 33 of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial *if the interest of justice so requires.*" *Fed. R. Crim. P.* 33(a) (emphasis added). Although a new trial may be based on newly discovered evidence, *see Fed. R. Crim. P.* 33(b)(1) (stating the time for filing of a motion for new trial based on "newly discovered evidence"); *see also United States v. Gianakos,* 404 F.3d 1065, 1079 (8th Cir.) (stating showings required to obtain a new trial based on newly discovered evidence), *cert. denied*, 126 S. Ct. 764 (2005), that is not the only ground. *See, e.g., Fed. R. Crim. P.* 33(b)(2) (stating the time to file a motion for new trial "grounded on any reason other than newly discovered evidence").

"The granting of a new trial under Rule 33 is a remedy to be used only 'sparingly and with caution.'" *United States v. Dodd,* 391 F.3d 930, 934 (8th Cir. 2004) (quoting *United States v. Campos,* 306 F.3d 577, 579 (8th Cir. 2002), in turn quoting *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir. 1980)). Somewhat more specifically,

The Rule specifies that the remedy should be granted only where "the interest of justice so requires." *Fed. R. Crim. P.* 33. The decision to grant a Rule 33 motion is within the sound discretion of the District Court, and we will reverse only for an abuse of that discretion. *Campos,* 306 F.3d at 579-80. The District Court's discretion is broad in that it may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Id.* at 579. This discretion is abused, however, if the District Court fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors. *Id.* at 580.

*Dodd,* 391 F.3d at 934. *"Unless the district court ultimately determines that a miscarriage of justice will occur,* the jury's verdict must be allowed to stand." *Campos,* 306 F.3d at 579 (emphasis added) (citing *United States v. Lacey,* 219 F.3d 779, 783 (8th Cir. 2000)); *accord Ortega v. United States,* 270 F.3d 540, 547 (8th Cir. 2001) ("A district court may grant a new trial under Rule 33 '"only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred."'") (quoting *Lacey,* 219 F.3d at 783, in turn quoting *United States v. Brown,* 956 F.2d 782, 786 (8th Cir. 1992)). However, "[i]f the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Baker*, 393 F.3d at 847-48. Thus, although the district court's authority should be exercised sparingly, the trial court, nevertheless, has broad discretion in deciding whether a new trial is warranted in the interest of justice. *See id*. at 848. "Absent a 'clear and manifest' abuse of discretion [an appellate court will] uphold the district court's ruling on a motion for new

trial." *Peters*, 462 F.3d at 957 (citing *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)). Having examined the appropriate standards of review applicable to the defendants' motions, the court now turns to its consideration of the defendants' arguments.

### 2. *Weight of the evidence*

#### a. *Count one*

As indicated previously, the court's obligation in ruling on a motion for new trial brought on the ground that the verdict is against the weight of the evidence is substantially different than the court's obligation in ruling on a motion for judgment of acquittal. *See United State v. Ruiz*, 105 F.3d 1492, 1501 (1st Cir. 1997) ("A district court's power to order a new trial is greater than its power to grant a motion for acquittal."). To resolve a motion for new trial, the court must weigh the evidence and evaluate the credibility of the witnesses to determine if a miscarriage of justice may have occurred. *See United States v. Davis*, 103 F.3d 660, 668 (8th Cir. 1996). As the parties are well aware, the court has been, and continues to be, troubled by the weight of the evidence in this case offered in support of the charge of conspiracy to corruptly endeavor to influence, obstruct and impede the due administration of justice in *United States v. Vincent Bertling*, CR05-4125-MWB, by intimidating witnesses. The inadequacy of the proof relative to Count One—the conspiracy charge—concerns the element of an agreement. As mentioned elsewhere in this opinion, in order to convict the defendants on a conspiracy charge, the government was required to prove beyond a reasonable doubt that each defendant "(1) had an agreement to achieve an illegal purpose, (2) knew of the agreement, and (3) knowingly became part of the agreement.'" *Wintermute*, 443 F.3d at 1003.

This court has had the opportunity to evaluate the credibility of the witnesses and to otherwise weigh the evidence presented at trial, and is compelled to conclude that the evidence weighs against a finding beyond a reasonable doubt that Vincent and Karl

Raymond entered into a conspiracy to corruptly endeavor to influence witnesses. The only evidence in the record demonstrating that Vincent *and* Karl Raymond entered into such a conspiracy is a fleeting statement that was made in a recorded conversation. Following Karl Raymond's statement that it was "time to go on a murder run," or "time to get a murder on," Vincent simply replied "something." This response, in the view of this court, is simply too vague and nebulous for the court to conclude the defendants entered into an agreement and that Vincent knew the purpose of this agreement. This is particularly true given the circumstances and the context of the entire conversation, which, for the most part, consist of a discussion about mundane and routine tasks that need to be tended to in light of Vincent's recent incarceration on drug charges. Although other evidence introduced at trial could be interpreted to imply that *Karl Raymond*, by himself, may have intended to improperly influence the witnesses, nothing in the record, with the exception of Vincent's vague response, suggests that *Vincent* was also aware of Karl Raymond's intention and agreed to that conduct. For example, although Karl Raymond may have referred to Maas as his "enforcer," there is no evidence this reference meant anything to Vincent. Likewise, although Karl Raymond may have indicated to Watson that he would "take care" of the witnesses testifying against his brother, nothing in the record reflects *Vincent* was aware of these statements or opinions. Thus, although the weight of the evidence may preponderate toward a finding that Karl Raymond intended to commit the substantive offense, that was not the crime charged or tried before this court. Rather, the crime charged in the Second Superseding Indictment was a charge of conspiracy and in this aspect, there is only very thin evidence, if any, that suggests an agreement was made and a conspiracy entered into. Rather, it is just as likely that Vincent's response of "something" was intended to mean "whatever," or intended as a joke because he thought Karl Raymond was exaggerating—which is probable considering the brothers had never

undertaken such a violent criminal endeavor in the past—or even just as an off-hand acknowledgment of his disfavor and disgust with the witnesses testifying against him. Contrary to the jury verdict, it is highly improbable that Vincent intended, with one single word, to form a serious, complicated, illicit agreement with his brother, to intimidate the witnesses testifying against him. Instead, after listening to the recorded conversation and in light of the defendants' non-violent history, the court is convinced that Vincent and Karl Raymond were merely blowing off steam or venting their frustrations, as opposed to forming a highly serious conspiracy in only a few sentences. The improbability that the defendants entered into a serious agreement is bolstered by the overall brevity of the defendants' conversation on this matter, which does not particularly lend itself to a conclusion that even a "tacit understanding" was formed. Although the government points out that the defendants proceeded to discuss where Joanna lived and worked, once again, it is just as likely the defendants engaged in this discussion for an innocent purpose, *i.e.* just as a matter of identification or simply because the normal flow of the conversation often leads to a discussion of "where" following a discussion "who." In sum, in weighing the evidence anew—as this court must in considering a motion for new trial—the court is left with a firm conviction that the evidence Vincent and Karl Raymond entered into a conspiracy to influence witnesses weighs heavily enough against the verdict that a miscarriage of justice has occurred. Accordingly, despite the abstract sufficiency of the evidence to sustain the verdict, the court concludes that the evidence preponderates sufficiently heavily against the verdict so that the verdict must be set aside and the defendants be granted a new trial so that the issues may be submitted for determination by another jury." *Baker*, 393 F.3d at 847-48. Thus, the court **grants the defendants' motions for new trial with respect to Count One.**

### b.    Counts two, three and four

Although the court has found that Vincent and Karl Raymond are entitled to a new trial on Count One, the court is not similarly persuaded that upholding Vincent's convictions on Counts Two through Four will result in a miscarriage of justice. Vincent avers that the evidence was insufficient to prove he was an unlawful user of controlled substances. Section 922(g)(3) prohibits "an unlawful user of  . . . any controlled substance" from possessing a firearm. The term "unlawful user" is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use. *E.g., United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) (upholding a district court's determination that the government must establish "a pattern of use and recency of use" as a reasonable application of the statute); *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001) (rejecting a void-for-vagueness challenge to § 922(g)(3) where defendant's "drug use was sufficiently consistent, 'prolonged,' and close in time to his gun possession to put him on notice that he qualified as an unlawful user of drugs") (citation omitted). Although Vincent essentially contends the evidence was insufficient to show a temporal nexus between his drug use and his possession of guns, his own admissions and the testimony elicited from multiple witnesses who witnessed Vincent partake in drug activity and usage refute this argument. Moreover, when Vincent was arrested, a methamphetamine pipe with methamphetamine residue was found in his pocket. After independently reviewing and weighing the evidence presented during the trial, the court finds that no grounds for a new trial on these convictions exist because such evidence weighs in favor of the jury verdict. *See United States v. Mack*, 343 F.3d 929, 933-35 (8th Cir. 2003) (holding evidence of unlawful use sufficient where defendant possessed user quantity of marijuana at the time of his arrest and arresting officers smelled marijuana, and

where one month earlier defendant had confronted witness about theft of his marijuana and fired a gun into the air); *United States v. Oleson*, 310 F.3d 1085, 1090 (8th Cir. 2002) (holding evidence of unlawful use sufficient where user quantity of amphetamine was found on table in defendant's residence (where he lived alone) and testimony established defendant frequently used drugs with his customers); *United States v. McIntosh*, 23 F.3d 1454, 1459 (8th Cir. 1994) (holding evidence of unlawful use sufficient where police found marijuana and drug paraphernalia in defendant's apartment; defendant admitted using "crank," or methamphetamine; and defendant admitted being addicted to drugs and alcohol). While it is documented in the record that Vincent was searched on approximately three occasions and was never found to have drugs or drug paraphernalia on his person following the execution of those searches, the overwhelming evidence in the case established that Vincent used and purchased methamphetamine on repeated occasions during the period alleged in the Second Superseding Indictment. Accordingly, Vincent's motion for a new trial is **denied with respect to Counts Two, Three and Four.**

### III. CONCLUSION

With respect to the motions for judgment of acquittal, viewing the evidence in the light most favorable to the government, the court concludes that a reasonable jury could have found both defendants guilty of conspiracy to corruptly endeavor to influence, obstruct and impeded the due administration of justice in *United States v. Vincent Bertling*, CR05-4125-MWB, by intimidating witnesses, in violation of 18 U.S.C. §§ 1503 and 371. Moreover, the court further finds that a reasonable jury could have found defendant Vincent guilty of the three counts of being an unlawful user of controlled substances in possession of a firearm, as alleged in Counts Two, Three and Four, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Therefore, **the defendants' motions for judgment**

**of acquittal are denied in their entirety**.

In considering the defendants' motions for new trial, the court has reviewed the evidence anew and weighed for itself the credibility of the witnesses who testified. Under these standards, the court finds that with respect to the verdicts rendered on Counts Two, Three and Four against Vincent, no miscarriage of justice has occurred. However, the court does find that the evidence supporting the convictions of the defendants on Count One weighs heavily enough against the verdict that a miscarriage of justice has occurred in this case. Accordingly, after much reflection and thought, the court finds that the defendants are entitled to a new trial on this specific count. Though I make this decision unflinchingly and without reservation, I have not made it lightly nor hastily due in no small measure to my unwavering and abiding faith in our system of trial by jury. I recognize that setting aside a decision of the jury "is a most solemn, serious, judicial duty of a trial Judge." *Logan*, 861 F.2d at 867 n.5. In exercising this cherished power and duty to set aside a jury verdict where there is a miscarriage of justice, I believe this "long-established, long-recognized, long-revered ultimate safeguard to liberty and justice" is preserved. *See id*. **The verdict as to Count One against defendants Vincent Bertling and Karl Raymond Bertling is set aside. Vincent Bertling and Karl Raymond Bertling are granted a new trial on this count. In all other respects, the defendants' motions for judgment of acquittal and new trial are denied.**

**IT IS SO ORDERED.**

**DATED** this 13th day of November, 2006.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA